UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*
**RAMACHANDRAN SEETHARAMAN,**  \*
       **Plaintiff**  \*
         \*
**vs.**  \*
         \*
**STONE & WEBSTER, INC., a**  \*
**Subsidiary of SHAW GROUP, INC.,**  \*  **CIVIL ACTION NO.**
**JOE GREEN, NICK ZERVOS,**  \*  **1:05-CV-11105-RWZ**
**DAVID EDWARDS AND JOHN**  \*
**MARTIN**  \*
       **Defendants**  \*
         \*
         \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### I.  INTRODUCTION

This employment discrimination action pursuant to M.G.L.A. c. 151B based on national origin, race. color, age, and handicap, seeks damages for the plaintiff's unlawful transfer and subsequent termination of his employment as a Principal Engineer for the Defendant Stone & Webster, Inc. Plaintiff also asserts claims for wrongful discharge in violation of public policy, for violation of his civil rights pursuant to M.G. L. c. 12, §11H,11I, for violation of the Massachusetts Constitution Article XLIX providing for the right of the people to have clean air and water and for conspiracy pursuant to 42 U.S.C.§ 1985.

1

## II.   THE PARTIES

1. Ramachandran Seetharaman (Hereinafter, "Seetharaman") is an individual residing in Ashland, Middlesex County, Massachusetts.

2. The Plaintiff is Seetharaman is a non-white United States Citizen, born November 13, 1957 in Tanjore, Tamilnadu, India and is of East Indian heritage and of dark complexion.

3. Seetharaman was over forty years of age during his employment at defendant Stone & Webster (a SHAW Group Company) from 3-2001 till 5-2002.

4. Defendant Stone & Webster is a corporation and subsidiary of the Shaw Group, which is a corporation headquartered in Baton Rouge, LA. Defendant Stone & Webster has a location at 100 Technology Center Drive, Stoughton, Massachusetts.

5. Defendant David Edwards is a resident of the Commonwealth of Massachusetts, and was at relevant times Seetharaman's direct supervisor in the Covert Badger and Goose Lake Projects from May 2001 through February 5, 2002

6. Defendant Nick Zervos is a resident of the Commonwealth of Massachusetts, and was at relevant times Seetharaman's direct supervisor of the Heat Balance/Thermal Engineering Group from February 6, 2002 through May 17, 2002.

7. Defendant John Martin is a resident of the Commonwealth of Massachusetts, was at relevant times the Project Engineer/Manager for Covert Badger and Goose Lake Projects and was David Edwards supervisor.

8. Defendant Joe Green is a resident of the Commonwealth of Massachusetts, was at relevant times Chief Mechanical Engineer of defendant Stone & Webster.

.

## III.    STATEMENT OF FACTS

9. Seetharaman commenced his employment at Stone & Webster (on March 19, 2001. His Title was Principal Engineer in the Mechanical Engineering Division. His work location was 100 Technology Center Drive, Stoughton, Massachusetts.

10. Seetharaman's first assignment around 3-22-2001 was to study and design a nuclear reactor system that utilized ammonia/water mixture as a working fluid. After review of the system, Seetharaman expressed his environmental and nuclear safety concerns to Joe Green, Chief Mechanical Engineer, who assigned him that task. His safety concerns were ignored. Joe Green again resurrected this project in June/July 2001, at which time; Seetharaman again protested its viability and effect on public safety. This angered management.

11. Seetharaman's second assignment was to work on a Power Plant – Pha-Lai in Vietnam late March 2001. He completed that work in about ten days.

12. In the first week of April 2001, Joe Green assigned Seetharaman to the Covert, Badger, and Goose Lake power plant design projects. He worked on these projects until February 6, 2002.

13. The Covert, Badger, Goose Lake power plant design projects were funded, owned and operated by Pacific Gas and Electric (via its past subsidiary PG&E National Energy Group). General Electric Company funded Pacific Gas Electric to the tune of about $ 570+ million dollars in March 2001, to enable these activities of Pacific Gas and Electric.

14. General Electric Company and Pacific Gas & Electric exercised control over the Covert, Badger, Goose Lake projects and its past subsidiary PG&E National Energy Group.

15. Stone & Webster became the engineering and construction agent for the Covert, Badger, and Goose Lake power plant design projects on March 15, 2001. The business and agency relationship was based on written publicly announced contracts and personal meetings of management personnel.

16. During his several assignments in the Covert, Badger, Goose Lake power plant design projects, Seetharaman engaged in numerous activities protected by the environmental laws and opposed the conduct of Stone & Webster engineering and management. Pacific Gas & Electric (the principal) was also aware of these protected activities via its agents.

17. Seetharaman opposed the project's emitting toxic substances in the air and potentially harming the public safety and not utilizing the controls that both Federal and State laws required. Seetharaman further opposed some engineering methodologies that were inherently wrong and unsafe violating OSHA and environmental laws and standards.

18. Seetharaman's relationship with management eroded rapidly commencing in May 2001, Seetharaman was ridiculed, subjected to intimidating and hostile work environment, segregated, limited and classified. The boiler work assignment was forcefully removed from him on 1-4-2002,

19. On or about February 5, 2002 Seetharaman was forcefully transferred against his will to a new Heat Balance Group on February 6, 2002. Witnesses

associated with and sympathetic/supportive of Seetharaman were intimidated as well and subject to adverse employment actions. A disproportionate number of employees of East Indian origin were terminated as well in 2002/2003. Seetharaman opposed the hostilities to his supervisor in the Fall of 2001 and expressed his feelings about not wanting to be transferred.

20. Upon transfer to Heat Balance Group Seetharaman's work environment became even more intimidating, harassing and hostile .

21 Seetharaman calculated nuclear steam pipe sizes for a nuclear station using a safe, well-established methodology. However, his co-worker "finagled" the results and utilized much smaller pipes. Seetharaman was deceived into signing the cover sheet of a nuclear calculation on 4-1-2002. Upon seeing the entire calculation the next day and noticing that his methods and the safe and correct pipe sizes were not used, he protested to his superior Nick Zervos on 4-3-2002 that nuclear safety has been compromised and Seetharaman refused to participate in this illegal conduct. His supervisor Nick Zervos threatened him with a statement – "we cut out people who don't follow our ways."

22. During the next assignment in April 2002, Zervos continued his hostility by intimidating Seetharaman stating, "You are getting old. Younger workers like Garcia are working faster"

23. Two week later around 4-17-2002, Seetharaman detected another flaw in a computer program ARROW and complained to the same supervisor Nick Zervos and Russ Bone and Frank Elia that utilizing that ARROW program for nuclear work will be problematic, unsafe and would not satisfy quality-control requirements and

5

hence they must follow a more rigorous procedure to test that software before it could be cleared to do nuclear work. Seetharaman mentioned another experienced worker Pete Queenan at the Company also agreed to use a more rigorous nuclear procedure, but Zervos snubbed that worker as an "Old nuclear goat that spent too much time on nuclear work". Nick Zervos has had a long relationship with General Electric, through an unsafe toxic Ammonia cycle called the "Kalina Cycle" from 1985 until 1996, which releases hot toxic Ammonia into the atmosphere. Seetharaman specifically protested the safety of this cycle in utilization for nuclear and other power work and also about GE's defective software that he has seen in the late 1980s while he worked for GE nuclear division. All this happened around 4-19-2002.

24. On or about April 29, 2002 Seetharaman's employment with defendant Stone & Webster was terminated.

25. During the course of his employment, Seetharaman engaged in protected activities and complained to both managers and some coworkers as well about public safety during his employment from 3-2001 till 5-2002 at Stone & Webster.

26. At least one white male coworker and a white female coworker (less than 40 years of age) at Stone & Webster also engaged in such protected activity during the period from March 2001 through May 2002. However these workers were not treated with contempt, subject to intimidating and hostile work environment, did not have work    forcefully removed from them, were not forcefully transferred and fired in a similar fashion like Seetharaman.

## COUNT ONE

### UNLAWFUL DISCRIMINATION BASED ON NATIONAL ORIGIN, COLOR, RACE HANDICAP AND AGE IN VIOLATION OF G.L. c. 151B § 4
### (ALL DEFENDANTS)

27. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff filed a timely charge with the Massachusetts Commission Against Discrimination (MCAD), and filed this complaint at the expiration of ninety days after the filing of the aforesaid complaint with MCAD.

29. The Plaintiff is a member of a protected class by virtue of his National Origin, (East Indian), Color, (Dark Complexion), Race, Handicap (Bad Back) and age (44 years old at time of termination) pursuant to G.L. c. 151B.

30. On information and belief, the Defendant Stone and Webster transferred and subsequently discharged the Plaintiff not for any legitimate reason but because of his National origin, Color, Race Handicap and Age thereby violating G.L. c. 151B § 4.

31. Defendants Edwards, Zervos, Martin and Green coerced, intimidated, threatened, or interfered with Seetharaman in the exercise or enjoyment of his rights as granted or protected by G.L. c. 151B in violation of G.L. c. 151B, §4, 4A.

32. Defendants Edwards, Zervos, Martin and Green aided, abetted, incited, compelled or coerced the doing of the above described unlawful conduct in violation of G.L. c. 151B, §4, 5

33. As a direct and proximate cause of the aforesaid discrimination, the Plaintiff has incurred and continues to incur a substantial loss of wages and benefits. The

Plaintiff will continue to suffer these, as well as other damages, to be established at trial.

## COUNT TWO
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
## (DEFENDANT STONE & WEBSTER)

34. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 33 as though fully set forth herein.

35. Between January 11, 2002 through February 4, 2002 Seetharaman was assigned the task of verifying a safety calculation for several dozen high pressure steam lines that affected plant safety on the Covert Power Project. Seetharaman found the entire calculation to wrong and unsafe and recalculated using a safe and sound engineering methodology.

36. Seetharaman informed his direct supervisor Dave Edwards that the original calculation would violate Occupational Safety and Health Administration (OSHA) regulations. I advised Edwards of the safety consequences of the calculation and importuned him to change the size of the pipes lest plant safety be compromised.

37. The next day Seetharaman was forcefully transferred to the Heat Balance Group.

38. From February 7, 2002 through April 2, 2002 Seetharaman calculated pipe line sizes for Lungman nuclear power plant. These calculations provided for safe operation of the nuclear power plant. However, Bill Card, a co – worker in the heat balance group finagled these pipe sizes to a much lower size. Seetharaman was deceived into signing the cover sheet of this calculation by Bill Card on April 1, 2002. Upon reviewing the entire calculation the next day, Seetharaman determined

       that the safe pipe sizes he recommended were not used in the calculation and he protested this to his supervisor Nick Zervos that he could not sign this "finagled" calculation because he feared that the lower sized pipes would result in an accident. Zervos threatened Seetharaman stating, "we cut out people who don't follow our ways."

39.     Three weeks later on or about April 29, 2002 Seetharaman's employment with defendant Stone & Webster was terminated by Green and Zervos.

40.     Seetharaman's employment was terminated because he refused to commit an unlawful act of designing projects that did not comply with OSHA standards, and because he was attempting to enforce the important public policy of ensuring compliance with OSHA in order to ensure the safety of the public.

41.     As a direct and proximate cause of the aforesaid discrimination, the Plaintiff has incurred and continues to incur a substantial loss of wages and benefits. The Plaintiff will continue to suffer these, as well as other damages, to be established at trial.

**COUNT THREE**
**VIOLATION OF HIS CIVIL RIGHTS PURSUANT TO M.G. L. C. 12, §11H, 11I**
**(ALL DEFENDANTS)**

42.     The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 41 as though fully set forth herein.

43.     Defendant Stone & Webster (a SHAW group Company), via an association in business and contract, and through agency relationships, and the individual defendants are "persons" within the meaning of M.G. L. C. 12, §11H, 11I.

44. In committing the above described acts, all defendants in this count, through threats, intimidation, or coercion by termination of employment, breach of oral promises, and withdrawal of funds, interfered with, or attempted to interfere with, with Seetharaman's secured rights of; speech and writings on matters of public concern; to have clean air and water, Atomic Energy Safety, and due process of the law, pursuant to the Massachusetts Constitution/ Declaration of rights, its bidding laws and deceptive practices law and Federal Constitution and Federal Laws - 42 USC 7401 et seq. (Title 42 – Chapter 85 – Air Pollution Prevention and Control - The Clean Air Act – "CAA"), 42 USC 9601 et seq. (Title 42 – Chapter 103 - Comprehensive Environmental Response, Compensation and Liability – "CERCLA" ), 33 USC 1251 et seq. (Title 33 – Chapter 26 - The Federal Water Pollution Control Act – "FWPCA"), 42 USC 2011 et seq. (Title 42 – Chapter 23 - The Atomic Energy Act – "AEA"), 42 USC 5801 et seq. (Title 42 – Chapter 73), 42 USC 13401 et seq. (The Energy Policy Act of 1992 (as the latest amendment), 15 USC 2601 et seq. (Title 15 – Chapter 53 – Toxic Substances Control -The Toxic Substances Control Act – "TSCA"), 42 USC 6901 et seq. (Title 42 - Chapter 82 – Solid Waste Disposal - Solid Waste Disposal Act – "SWDA") , and 29 USC 660 (OSHA), 29 USC 666, Federal bidding laws, Sherman Act, Clayton Act and Robinson-Patman Act.

45. These above mentioned acts combined to form sufficient coercion under the Massachusetts Civil Rights Act because the natural effect intended or not, of said conduct was to coerce Seetharaman through contract breach, creation of intimidating and hostile work environment, limitation, segregation and classification, denial of promised training, forced transfer and termination of employment.

46. As a direct and proximate cause of the aforesaid discrimination, the Plaintiff has incurred and continues to incur a substantial loss to be established at trial.

**COUNT FOUR**
**VIOLATION OF THE MASSACHUSETTS CONSTITUTION ARTICLE XLIX**
**PROVIDING FOR THE RIGHT OF THE PEOPLE TO**
**HAVE CLEAN AIR AND WATER**
**(Defendant Stone & Webster)**

47. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 46 as though fully set forth herein.

48. Article XLIX of the Amendments to the Constitution provides that "The people shall have the right to clean air and water, freedom from excessive and unnecessary noise, and the natural, scenic, historic, and esthetic qualities of their environment; and the protection of the people in their right to the conservation, development and utilization of the agricultural, mineral, forest, water, air and other natural resources is hereby declared to be a public purpose."

49. In furtherance of the principles set forth in Article XLIX of the Amendments to the Constitution Seetheraman opposed defendant Stone & Webster management's efforts to "cut corners" on Covert, Badger, and Goose Lake power plant design projects, by resorting to unsafe and environmentally derelict engineering and construction methodologies. They further conspired to violate bidding and antitrust laws. Seetharaman was the only individual, who opposed these practices repeatedly. Such opposition by Seetharaman began both verbally and in writing beginning April 2001 and continued unabated till February 4, 2002.

50. Seetharaman opposed these projects emitting toxic substances in the air and potentially harming the public safety and not utilizing the controls that both Federal and State laws stipulated. Seetharaman further opposed some engineering methodologies that were inherently wrong and unsafe violating OSHA and environmental laws and standards.

51. In retaliation for Seetharaman's exercise of his rights as protected by Article XLIX of the Amendments to the Constitution, defendant Stone & Webster engaged in a course of conduct designed to create an intimidating and hostile work environment, limitation, segregation and classification, denial of promised training, forced transfer and termination of employment.

52. As a direct and proximate cause of the aforesaid retaliation, the Plaintiff has incurred and continues to incur a substantial loss to be established at trial

**COUNT FIVE**
**CONSPIRACY PURSUANT TO 42 U.S.C. § 1985**
**(All Defendants)**

53. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 52 as though fully set forth herein.

54. Defendant Stone & Webster via an association in business and contract, and through agency relationships, and the individual defendants are "persons" within the meaning of 42 U.S.C. § 1985.

55. Defendant Stone & Webster and individual defendants via conspiracy occasioned harm and third-party interference with at-will employment relationship with Stone & Webster (a SHAW group Company) against Seetharaman. Such

unlawful interference was with malice and it was to intimidate and retaliate against Seetharaman for engaging in activity protected by state and federal law as set forth in the succeeding paragraph.

56. In committing the above described acts, all defendants in this count, through threats, intimidation, or coercion by termination of employment, breach of oral promises, withdrawal of funds, interfered with, or attempted to interfere with, with Seetharaman's secured rights of; speech and writings on matters of public concern; to have clean air and water, Atomic Energy Safety, and due process of the law, pursuant to the Massachusetts Constitution/ Declaration of rights, its bidding laws and deceptive practices law and Federal Constitution and Federal Laws - 42 USC 7401 et seq. (Title 42 – Chapter 85 – Air Pollution Prevention and Control - The Clean Air Act – "CAA"), 42 USC 9601 et seq. (Title 42 – Chapter 103 - Comprehensive Environmental Response, Compensation and Liability – "CERCLA" ), 33 USC 1251 et seq. (Title 33 – Chapter 26 - The Federal Water Pollution Control Act – "FWPCA"), 42 USC 2011 et seq. (Title 42 – Chapter 23 - The Atomic Energy Act – "AEA"), 42 USC 5801 et seq. (Title 42 – Chapter 73), 42 USC 13401 et seq. (The Energy Policy Act of 1992 (as the latest amendment), 15 USC 2601 et seq. (Title 15 – Chapter 53 – Toxic Substances Control -The Toxic Substances Control Act – "TSCA"), 42 USC 6901 et seq. (Title 42 - Chapter 82 – Solid Waste Disposal - Solid Waste Disposal Act – "SWDA") , and 29 USC 660 (OSHA), 29 USC 666, Federal bidding laws, Sherman Act, Clayton Act and Robinson-Patman Act.

57. These above mentioned acts combined to form sufficient intimidation and retaliation against Seetharaman for being a witness in Federal Proceedings –

58. Defendant's conduct was to intimidate Seetharaman through contract breach, creation of intimidating and hostile work environment, limitation, segregation and classification, denial of promised training, forced transfer and termination of employment. Seetharaman was "injured in his person and property" by means of these unlawful acts.

59. As a direct and proximate cause of the aforesaid retaliation, the Plaintiff has incurred and continues to incur a substantial loss to be established at trial.

## COUNT SIX
### TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP
### (Defendants Zervos, Edwards, Green and Martin)

60. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 59 as though fully set forth herein.

61. Seetharaman was in an "advantageous relationship" with his employer Defendant Stone & Webster by virtue of his receipt of a favorable performance evaluation that rated him as "promotable" and as an "achiever". Seetharaman was further in an "advantageous relationship" with his employer Stone & Webster by virtue of his repeated abilities and actions to bring in multi-million dollar proposals for potential business to Stone & Webster.

62. Defendants knowingly, out of "malice", for an improper purpose and utilizing improper means interfered with Seetheraman's advantageous relationship with Stone & Webster by inducing Stone & Webster not to enter into or continue a business relationship, resulting in termination of Seetharaman's employment.

63. The acts of these defendants were wrongful, made without rational basis, in bad faith, with reckless disregard as to the truth or falsity of the statements used in support of the said acts, with a race, color, national origin, age, anti-"public safety" speech based discriminatory animus, and were otherwise improper.

64. As a direct and proximate cause of the aforesaid interference the Plaintiff has incurred and continues to incur a substantial loss to be established at trial.

## COUNT SEVEN
## PROMISSORY ESTOPPEL
### (Defendants Stone & Webster, Zervos, and Green)

65. The Plaintiff re-alleges and incorporates by reference herein the averments set forth Paragraphs 1 through 64 as though fully set forth herein.

66. On or about December 6, 2001 Defendants Stone & Webster, Zervos, and Green asked Seetheraman to consider a transfer to the heat balance group with a promise of two years of training, continued employment, investment and promotion to a higher position.

67. Seetharaman reasonably relied on these promises and transferred to the heat balance group on or about February 6, 2002;

68. Defendants Stone & Webster, Zervos, however deceived Seetheraman and fired him just eleven weeks later on or about April 29, 2002.

69. As a direct and proximate cause of the aforesaid conduct the Plaintiff has incurred and continues to incur a substantial loss to be established at trial.

**WHEREFORE,** the Plaintiff requests this Honorable Court to:

1. Enter judgment against the Defendants;

2. Award Damages on all counts in an amount to be determined at trial for financial losses sustained and other damages to be determined at trial, including but not limited to:

    a. Loss of income and benefits;

    b. Future loss of income and benefits;

    c. Damages for emotional distress;

    d. Treble Damages pursuant to G.L. c. 151B § 9;

    e. Compensatory Damages;

    f. Punitive Damages

    g. Reasonable Attorney's fees;

    h. Fees and Costs of this action;

    i. Such further relief as this Honorable Court deems just and proper.

**THE PLAINTIFF IN THE ABOVE ENTITLED ACTION DEMANDS A TRIAL BY JURY.**

      **RAMACHANDRAN SEETHARAMAN**,
      Plaintiff
      By his Attorney,

      s/Howard I. Wilgoren

      HOWARD I WILGOREN
      179 Union Avenue
      Framingham, MA 01702
      (508) 626-8600
      BBO No. 527840

DATED: June 6, 2005