UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11105-RWZ

RAMACHANDRAN SEETHARAMAN

v.

STONE & WEBSTER, INC., JOE GREEN, NICK ZERVOS,
DAVID EDWARDS and JOHN MARTIN

MEMORANDUM AND ORDER

May 11, 2009

ZOBEL, D.J.

This opinion is the latest chapter in an ongoing saga between the parties which

started when defendant Stone & Webster, Inc. ("S&W") terminated plaintiff

Ramachandran Seetharaman's ("Seetharaman") employment seven years ago.

Seetharaman filed a barrage of claims in a variety of forums, including various state

and federal discrimination claims in this court and employment discrimination and

retaliation claims with the Department of Labor's Occupational Safety and Health

Administration ("OSHA").  At the parties' request, the court agreed to stay this action

pending the outcome of plaintiff's OSHA complaint.  After a long delay, S&W emerged

from the Department of Labor proceedings victorious.  Now defendants (S&W and

several of its employees) seek summary judgment on plaintiff's remaining claims,

primarily asserting that these claims are barred by issue and claim preclusion.

**I.      Background**

### A.    The Department of Labor Proceedings

In his OSHA complaint, plaintiff alleged that S&W[1] violated the employee

protection provisions of various statutes[2] by terminating his employment and engaging

in other acts of employment discrimination in retaliation for his statutorily protected

"whistleblowing" activities.  OSHA rejected plaintiff's claims in October 2002, and

plaintiff timely appealed the determination to an Administrative Law Judge ("ALJ")

within the Department of Labor for a formal hearing.  The hearing convened in

December 2003, and was continued over the course of twelve additional days

throughout 2004.  During the hearing both parties were represented by counsel and

were afforded an opportunity to present evidence and argument.  Plaintiff testified on

his own behalf and S&W called six witnesses; documentary evidence was also

submitted.  The ALJ issued his opinion in November 2005, finding in S&W's favor on all

claims.  (See Recommended Decision and Order ("RD&O"), Nov. 30, 2005 (Docket #

16-3).)  Specifically, the ALJ determined that plaintiff had made out a prima facie case

---

[1] Plaintiff also filed related complaints against General Electric Company, Pacific Gas and Electric Company, Exelon Corporation, Mitsubishi Power Systems, Massachusetts Water Resources Authority, Nebraska Boiler Company and English Boiler and Tube, Inc., alleging that these entities acted in concert with S&W to violate his rights.  These complaints were all summarily dismissed in 2004 after plaintiff was given an opportunity to show cause why summary decision was not warranted. See Seetharaman v. Gen. Elec. Co., ARB Case No. 03-029, 2004 WL 1261217 (DOL Adm. Rev. Bd. May 28, 2004).

[2] Specifically, the Clean Air Act, 42 U.S.C. § 7622, the Comprehensive Environmental Recovery, Compensation and Liability Act, 42 U.S.C. § 9610, the Federal Water Pollution Control Act, 333 U.S.C. § 1367, the Solid Waste Disposal Act, 42 U.S.C. § 6971, the Toxic Substance Control Act, 15 U.S.C. § 2622, the Energy Reorganization Act of 1974, 42 U.S.C. § 5851, and the implementing regulations found at 29 C.F.R. Part 24.

of discrimination, i.e., he had shown "that the employer is subject to the applicable whistleblower statutes, that the complainant engaged in protected activity under the statute of which the employer was aware, that the complainant suffered adverse employment action and that a nexus existed between the protected activity and the adverse action." (Id. at 13.) S&W was therefore required to put forth evidence supporting its defense that it terminated plaintiff based upon legitimate, nondiscriminatory considerations. The ALJ found that S&W carried this burden of production, and the burden of persuasion accordingly shifted back to Seetharaman. The ALJ determined that Seetharaman had failed to prove by a preponderance of the evidence that S&W terminated his employment because of protected activity. (See generally id. at 13-24.) In particular, the ALJ determined that S&W terminated plaintiff as part of a company-wide, ten-percent reduction in force ("RIF") in response to a substantial decrease in its business, and plaintiff was included in the group that was terminated due to his status as the lowest performing engineer in his division. The ALJ found plaintiff to be an unbelievable witness, describing his "disturbing tendency to sensationalize and exaggerate the facts" (id. at 19), and ultimately concluded that plaintiff "has failed to introduce any credible evidence to rebut S&W's evidence that he was included in the RIF because he was the least productive member" of his division. (Id. at 24.)

Plaintiff appealed the ALJ decision to the Department of Labor's Administrative Review Board ("ARB"). The ARB engaged in a de novo review of plaintiff's claims and affirmed the ALJ's determination in an order issued in August 2007. (Final Decision

and Order ("FD&O"), Aug. 31, 2007 (Docket # 16-2).)  The ARB rejected plaintiff's argument that the ALJ had committed legal error by not analyzing S&W's actions under a "mixed motive" rubric, noting, "[b]ecause Seetharaman failed to establish by a preponderance of the evidence that his protected activity either motivated or contributed to the adverse action, neither the ALJ, nor we have reason to engage in dual motive analysis."  (Id. at 5.)

Plaintiff then appealed the ARB decision to the Court of Appeals for the First Circuit.  On September 22, 2008, the First Circuit issued a judgment which affirmed the ARB decision and "reject[ed] petitioner's contention that the agency misapplied the law in any fashion, either as to procedure or as to substance."  Seetharaman v. United States Dep't of Labor, No. 07-2614 (1st Cir. Sept. 22, 2008) (Docket # 19-2).

**B.     Proceedings in This Court**

Plaintiff has amended his complaint on several occasions, at one point filing a separate action which was consolidated into the present one.  See Seetharaman v. Stone & Webster, Inc., et al., Civ. A. No. 05-11863 (D. Mass. filed Sept. 14, 2005).  The complaint from the separate action is the operative complaint.  (See id. Docket # 1 ("Compl.").)  The complaint asserts eight "counts," several of which include multiple claims, which allege violations of state and federal discrimination laws, conspiracy in violation of 42 U.S.C. § 1985 and state claims based upon wrongful discharge, violations of the Massachusetts constitution, tortious interference with advantageous

4

relations and promissory estoppel.[3]

After the ARB's decision was affirmed by the Court of Appeals for the First Circuit, defendants filed a motion for summary judgment on all counts in the complaint. At the heart of defendants' dispositive motion lies the argument that plaintiff's claims are barred by the doctrines of issue and claim preclusion, although they also make independent arguments for judgment in their favor on some of plaintiff's claims.

## II.    Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "For a dispute to be 'genuine,' there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in the nonmovant's favor.  The evidence cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial.  However, the evidence must at all times be viewed in the light most favorable to the nonmovant, and all doubts and reasonable inferences must be resolved in the nonmovant's favor."  Casas Office Machs., Inc. v. Mita Copystar Am., 42 F.3d 668, 686 (1st Cir. 1994) (internal citations omitted).

### B.    Res Judicata

There are two different aspects of res judicata – claim preclusion and issue preclusion (also known as collateral estoppel).  The First Circuit has explained:

---

[3] At the time the complaint was filed, plaintiff was represented by counsel who has since withdrawn as did successor counsel.  Plaintiff is now appearing pro se.

> As the names suggest, claim preclusion operates on the level of the claim, and issue preclusion operates on the level of the issue. Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment. In contrast, issue preclusion does not reach issues unless they were actually litigated and decided in the first litigation; however, it bars relitigation of those issues even in the context of a suit based on an entirely different claim.

In re Sonus Networks, Inc. S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) (internal citations omitted).

"Federal law determines whether an earlier judgment, rendered in a federal court, bars the maintenance of a subsequent federal court action." In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). For claim preclusion to apply, there must be "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998).

There are four elements needed for the successful application of issue preclusion: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). Issue preclusion may be asserted by parties who were not present in the initial action. See Parklane Hoisery Co. v. Shore, 439 U.S. 322 (1979); Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 n.8 (1st Cir. 1995) ("A

6

party invoking issue preclusion need not show that it was privy to the first proceeding. . . . It need only show that the party against whom issue preclusion will be applied had a fair opportunity to litigate the issue fully.").

      **C.**    **Discrimination Claims**

      The court discusses plaintiff's discrimination claims only to the extent that the legal standards involved are relevant to defendants' res judicata arguments.  Plaintiff alleges unlawful discrimination based on national origin, color, race, handicap, age and retaliation under the following statutes: Mass. Gen. Laws ch. 151B, § 4; Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e; the Civil Rights Act of 1991, 42 U.S.C. § 1981; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; the Rehabilitation Act, 29 U.S.C. § 794; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.

      There are two avenues for proving claims of discrimination based on race, national origin or color, focused on either "pretext" or "mixed motive."  The burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), focuses on pretext.  A plaintiff suing under Title VII bears the initial burden of establishing a prima facie case of discrimination.  The burden of production then shifts to the defendant to articulate a "legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against [the plaintiff], for the employment decision." <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 176 (1st Cir. 2008) (internal quotation marks and citation omitted).  If the defendant meets this burden, the presumption of discrimination drops from the case and the burden shifts

back to the plaintiff, who must demonstrate that the employer's stated reason for the adverse action was pretext for discrimination.  Id.[4]

In a "mixed motives" case, "an unlawful employment practice is established when the complaining party demonstrates that race, color, . . . or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).  Here, an employer has an affirmative defense if it can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor."  Id. § 2000e-5(g)(2)(B).  In that instance, liability will still attach but the plaintiff's remedies are limited.  See Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (discussing mixed-motive analysis).[5]

Although the relationship between these two frameworks has not been "definitively disentangled or reconciled," under both approaches a plaintiff "must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in

---

[4] The same analysis is used for ADEA claims.  See Sher v. United States VA, 448 F.3d 489, 507 n.21 (1st Cir. 2008).  Massachusetts courts have also adopted the McDonnell Douglas framework for analyzing ch. 151B claims.  See Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83-84 (1st Cir. 2004).

[5] Plaintiff has not explicitly pled a mixed motive theory of discrimination. However, the court is required to construe pro se claims liberally and plaintiff does plead a violation of the Civil Rights Act of 1991.  That Act amended Title VII to include a mixed-motive analysis.  See Desert Palace, 539 U.S. at 94 (noting that the 1991 Act responded to prior Supreme Court precedent by "setting forth standards applicable in 'mixed motive' cases in two new statutory provisions") (internal quotation marks and citation omitted).  Plaintiff also argues in his opposition that this is a mixed motive case. (See Pl.'s Opp. to Mot. for Summ. J. (Docket # 30), 48-49.)  Accordingly, the court construes plaintiff's claims to include discrimination based upon mixed motives.

part by a forbidden type of bias." <u>Chadwick v. WellPoint, Inc.</u>, 561 F.3d 38, 45, 45 n.8

(1st Cir. 2009) (quoting <u>Hillstrom v. Best Western TLC Hotel</u>, 354 F.3d 27, 31 (1st Cir.

2003)).  In this regard, it is well to remember that "federal law does not protect

generally against arbitrary or unfair treatment in private employment, but only against

actions motivated by listed prejudices such as race, age and gender.  Discrimination is

a form of unfairness; but not all unfairness is discrimination." <u>Sabinson v. Trs. of</u>

<u>Dartmouth College</u>, 542 F.3d 1, 4 (1st Cir. 2008) (internal citations omitted).

**III.    Discussion**

Although defendants assert that both claim and issue preclusion apply, they

recognize that plaintiff's claims in the DOL proceedings differ from those he asserts

here.  Nonetheless, the claims in both actions are based upon many of the same

alleged facts.  Claim preclusion typically applies to all claims that "were or could have

been raised" in the first action.  <u>Mass. Sch. of Law at Andover</u>, 142 F.3d at 38.

However, there is no indication that plaintiff could have brought his discrimination and

state law claims in the DOL proceeding, and claim preclusion will not attach "if the

claim asserted in the second suit could not have been asserted in the first." <u>Id.</u> at 39.

Accordingly, although in one instance (discussed below) claim preclusion applies, the

court is primarily concerned with issue preclusion, i.e., whether plaintiff may relitigate

an ultimate fact or issue which was fully litigated in the DOL proceeding.

The first question is whether res judicata may apply to determinations made by

administrative agencies.  The answer is unequivocally yes.  "Normally, decisions of

administrative agencies are entitled to res judicata effect when the agency acted in a

judicial capacity." <u>Aunyx Corp. v. Canon U.S.A., Inc.</u>, 978 F.2d 3, 7 (1st Cir. 1992)

(citing <u>Univ. of Tennessee v. Elliott</u>, 478 U.S. 788, 797-98 (1986)); <u>see also</u> <u>Elliott</u>, 478

U.S. at 797 ("We have previously recognized that it is sound policy to apply principles

of issue preclusion to the factfinding of administrative bodies acting in a judicial

capacity."). Here, the ALJ and ARB were clearly acting in a judicial capacity in

resolving plaintiff's claims. The ALJ held multiple days of hearings at which both

parties (who were represented by counsel) submitted documentary and testimonial

evidence, and both parties also submitted numerous memoranda of law during the

course of the ALJ's consideration of the case. The ALJ ultimately issued a decision

setting forth his findings of fact and conclusions of law (the RD&O), and this decision

was affirmed by the ARB (in the FD&O) and the First Circuit. Both parties were given a

full and fair opportunity to litigate the issues in question, and the issues were resolved

in a final and binding judgment. Accordingly, the DOL proceedings have res judicata

effect. To determine the particulars of this effect the court must analyze which claims

and issues were litigated and determined previously, and compare them with the issues

and claims that comprise plaintiff's current suit.

**A.    DOL Proceedings**

In the DOL proceedings, plaintiff claimed that S&W subjected him to adverse

employment actions, including transferring him to its Heat Balance Group ("HB Group")

and ultimately terminating him, in retaliation for his whistleblower activities. The ALJ

specifically found that plaintiff's supervisor in the HB Group never told him that "we cut

out people who don't follow our ways," nor otherwise threatened him with termination in

10

response to plaintiff raising nuclear safety concerns, and his references to plaintiff

"always quibbling about things" and "looking for things to go wrong" were "made in the

context of his description of Seetharaman's work-product and not in response to any of

Seetharaman's protected activities."  (RD&O, 6, 23.)  Seetharaman argued that S&W's

reduction in force was a pretext for terminating him due to his whistleblowing activities.[6]

The ALJ rejected this argument, specifically finding:

> Seetharaman's evidence of the overall economic health of The Shaw Group
> [S&W's parent company] during 2002 is insufficient to rebut the specific,
> credible and uncontradicted testimony from S&W witnesses . . . that the
> reduction in power generation backlog reduced S&W's need for engineers
> and that the contemporaneous increase in nuclear backlog is attributable to
> an increase in nuclear plant maintenance contracts which do not require the
> expertise of the HB Group or engineering services in general.  Seetharaman
> tries to counter this evidence by making a vague and unsupported assertion
> that mechanical engineers, including himself and Bill Card, have historically
> performed maintenance work at nuclear power plants.  As he cites no
> evidence in the record that either he or Card did maintenance work at
> nuclear plants, I give no credence to this claim.  As a result, I must find that
> the increase in nuclear maintenance backlog has little, if any relevance in
> consideration of whether Seetharaman was terminated for discriminatory
> reasons.  That Seetharaman has not shown S&W's proffered reasons for the
> RIF to be pretextual is underscored by the uncontradicted evidence that (1)
> the HB Group suffered a decline in work in the spring of 2002; and (2)
> shortly after Seetharaman was terminated, a second HB Group engineer,
> Jay Yong, was let go, and another engineer, Ignacio Garcia, was reassigned
> out of the HB Group due to the lack of available work.

(Id. at 22 (internal citations omitted).)  After considering and rejecting several other

contentions made by plaintiff, the ALJ ultimately concluded "that Seetharaman has

failed to introduce any credible evidence to rebut S&W's evidence that he was included

---

[6] "In essence, Seetharaman contends that S&W unnecessarily laid off ninety
engineers in its Stoughton office in May 2002, including 23 employees from the
Mechanical Engineering Department where he worked, to cover up its discriminatory
decision to terminate his employment."  (RD&O, 22.)

in the RIF because he was the least productive member of the HB Group." (Id. at 24.)

The ALJ also determined that plaintiff's evidence "fell well short [of] establishing that

S&W uses bad science which endangers public safety and the environment." (Id. at

23.)

### B.    Current Claims

#### 1.    Claims Based Upon Protected Activities

Many of plaintiff's claims are based upon the supposed retaliation he endured

due to his protected activities: wrongful discharge in violation of public policy (Count

III); violation of his civil rights pursuant to Mass. Gen. Laws ch. 12, §§ 11H and 11I

(Count IV); violation of the Massachusetts Constitution Article XLIX, providing for the

right of people to have clean air and water (Count V); and conspiracy to interfere with

his employment relationship with S&W "for engaging in activity protected by state and

federal law" (Count VI) (Compl. ¶ 65).  These claims are all precluded by the DOL

proceedings, which clearly established that Seetharaman did not suffer any adverse

employment actions as a result of his alleged whistleblowing activities.

#### 2.    Remaining Discrimination Claims

In Counts I and II plaintiff alleges unlawful discrimination based on national

origin, color, race, handicap, age and retaliation in violation of Mass. Gen. Laws ch.

151B, § 4, and a panoply of federal laws.  His claims are based upon his allegations

that he was involuntarily transferred to the HB Group and ultimately terminated "not for

any legitimate reason but reason of his National origin, Color, Race, Handicap, and

Age." (Compl. ¶¶ 30, 40.)

12

The ALJ concluded that plaintiff's claim that he was transferred to the HB Group in retaliation for his protected activities was untimely.  (RD&O, 8.)  Plaintiff is therefore precluded from bringing this claim here.  See Aunyx, 978 F.2d at 7-8 (barring claim which party failed to timely bring in prior proceeding).  The ALJ did not consider plaintiff's current claim that he was transferred to the HB Group for other discriminatory reasons.  However, this claim is also untimely.  The ARB held, in upholding the ALJ's timeliness determination, that plaintiff "had unequivocal knowledge of the transfer no later than the second week in November 2001."  (FD&O, 7.)  This factual finding, being essential to the prior determination, has preclusive effect in this suit.  Plaintiff did not file his MCAD and EEOC claim until October 24, 2002, more than 180 days after he was notified of the transfer in November 2001.  (See Pl.'s Opp. to Summ. J., Ex. 6.) See also 42 U.S.C. § 2000e-5(e)(1) (charge must be filed within 180 days after alleged unlawful employment practice); Mass. Gen. Laws ch. 151B, § 5 (complaint must be filed within six months after alleged act of discrimination).[7]  These claims are therefore time-barred.

Even considering plaintiff's transfer to the HB Group,[8] the ALJ rejected plaintiff's hostile work environment claim, finding that "the complained-of conduct was not so severe or pervasive that it altered Seetharaman's conditions of employment and

---

[7] In 2004, the statute was amended to extend the relevant period to 300 days.  It is not material which time limit applies, as plaintiff did not file his administrative claims even within this extended period.

[8] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (discrete discriminatory acts are not actionable if time-barred, but employee can use the prior acts "as background evidence in support of a timely claim").

13

amounted to the type of harassment that would have detrimentally affected a reasonable person or unreasonably interfered with Seetharaman's work performance." (RD&O, 10-11.)  Plaintiff cannot relitigate this claim here.

With regard to plaintiff's termination, the DOL proceedings conclusively established that S&W terminated plaintiff for legitimate reasons.  He is therefore precluded from arguing that S&W's proffered reason for termination has no basis in fact.  See S. Pac. R.R. Co. v. United States, 168 U.S. 1, 48 (1897) (any fact distinctly put in issue between the parties and determined by a trier of fact cannot subsequently be disputed).  Plaintiff therefore cannot assert a claim for discrimination based upon pretext.  See Tice v. Bristol-Myers Squibb Co., 515 F. Supp. 2d 580, 593-94 (W.D. Pa. 2007), aff'd, No. 07-3977, 2009 WL 943838 (3d Cir. Apr. 8, 2009) (unpub.) (prior agency determination that plaintiff was fired for legitimate business reason and not for protected activity precluded plaintiff's Title VII and ADEA claims based upon alleged pretext for termination); cf. Kosakow v. New Rochelle Radiology Assoc., 274 F.3d 706, 733 (2d Cir. 2001) (prior factual determination that plaintiff was terminated for legitimate business reason precluded current claim that she was terminated in violation of Family and Medical Leave Act because the issue of whether plaintiff was terminated for financial reasons was "necessarily . . . decided in the prior action").

Nonetheless, the prior proceedings were concerned exclusively with plaintiff's whistleblower claims and did not consider his claims of discrimination based upon race, national origin, age and handicap.  To the extent plaintiff alleges that he was terminated based on a "mixed motive" of legitimate and illegitimate reasons, his claims

14

under ch. 151B, Title VII, the ADEA and the ADA are not precluded.[9]  See Thomas v.

Contoocook Valley Sch. Dist., 150 F.3d 31, 42 (1st Cir. 1998) (conclusion by

administrative agency that there was "sufficient evidence" that teacher was terminated

for cause did not preclude consideration of whether termination was motivated by

discrimination); Tolefree v. Kansas City, Missouri, 980 F.2d 117, 1174 (8th Cir. 1992)

(administrative determination that termination for bad performance was "justified" did

not preclude plaintiff from pursuing Title VII mixed-motive claim).

Defendants have not briefed, in other than a summary fashion, the substantive

merits of plaintiff's discrimination claims.  Accordingly, the court does not express any

view as to their merit at this time.

### 3.    Tort Claims

Plaintiff alleges in Count VII that the individual defendants tortiously interfered

with his employment relationship with S&W for an improper purpose relating to his

"race, color, national origin, disability, age [and] anti-'public safety' speech."  (Compl.

¶ 73.)  Defendants argue that a failure to establish discriminatory motive in ch. 151B

---

[9] The mixed-motive analysis applies to claims under ch. 151B, see Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination, 729 N.E.2d 1068, 1078 (Mass. 2000), overruled on other grounds by Stonehill Coll. v. Mass. Comm'n Against Discrimination, 808 N.E. 2d 205, 216 n.17 (2004); the ADEA, see Sher v. United States Dep't of Veterans Affairs, 488 F.3d 489, 507 n.21 (1st Cir. 2007) (First Circuit applies the same framework to Title VII and ADEA claims); and the ADA, see Katz v. City Metal Co., Inc., 87 F.3d 26, 33 (1st Cir. 1996).  However, plaintiff's Rehabilitation Act claim is dismissed, as S&W is not a public employer.  "The ADA and Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on his or her disability. The Rehabilitation Act, the precursor of the ADA, applies to federal agencies, contractors and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments."  Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

claims against an employer also disposes of claims against supervisors for tortious interference.  While this is accurate, see Brunner v. Stone & Webster, 603 N.E.2d 206, 211 (Mass. 1992), plaintiff's ch. 151B discrimination claim based upon mixed motive remains in the case.  Accordingly, his tortious interference claim based upon discriminatory motive related to race, color, national origin, disability and/or age is not precluded.  However, his claim of tortious interference based upon his alleged "public safety" speech is precluded by the DOL proceedings, which conclusively established that he was not terminated due to any protected activities.

Finally, plaintiff asserts a claim for promissory estoppel (Count VIII) based upon his transfer to the HB Group.  In his complaint Seetharaman alleges that he voluntarily transferred to the HB Group in reliance on promises by defendants that he would be given "two years of training, continued employment, investment and promotion to a higher position."  (Compl. ¶¶ 76-77.)  He is barred from asserting this claim by the doctrine of judicial estoppel, which "precludes parties in civil litigation from asserting legal or factual positions inconsistent with positions that they took in prior proceedings." Thomas, 150 F.3d at 44 n.10.  In the DOL proceedings plaintiff consistently asserted that he was "forced" to transfer to the HB Group in retaliation for his protected activities. (See, e.g., RD&O, 2 (plaintiff's OSHA complaint alleged that S&W violated the employee protection provisions of federal statutes by, inter alia, transferring him to the HB Group); id. at 10 (discussing plaintiff's allegations that events surrounding his transfer to the HB Group demonstrated a hostile work environment).)  He cannot now claim that he voluntarily transferred to the HB Group in reliance upon promises made

16

by defendants.

## IV.    Conclusion

The court stresses that defendants have sought summary judgment based primarily on res judicata.  The parties did not brief, and this court has not considered, the substantive merit of plaintiff's discrimination claims.  With regard to the application of res judicata, the court has considered all of the contrary arguments raised in plaintiff's 50-page opposition and to the extent not discussed above finds them to be without merit.

As a matter of issue preclusion, plaintiff's claims of discrimination based upon a "mixed motives" analysis remain open.  However, plaintiff cannot reargue the prior determination that S&W terminated plaintiff's employment for a legitimate reason, i.e., that he was the least productive member of the HB Group.  Therefore, as a practical matter, plaintiff's possible relief is limited.  For example, even if plaintiff can prove his Title VII claim, the court is limited to granting declaratory relief, injunctive relief, and attorneys' fees and costs, but cannot award damages or issue an order requiring reinstatement, hiring, promotion or payment.  See 42 U.S.C. § 2000e-5(g)(2)(B)(i), (ii). Given these circumstances, plaintiff may wish to consider carefully the merits of his remaining claims before determining whether he wishes to pursue them further.[10]

Defendants' motion for summary judgment (Docket # 21) is ALLOWED as to Counts III, IV, V, VI and VIII.  It is DENIED WITHOUT PREJUDICE as to Counts I, II

---

[10] In this regard, the court notes that although plaintiff is pro se he is not immune from the requirements of Federal Rule of Civil Procedure 11.

17

and VII.


_____May 11, 2009_____                _____/s/Rya W. Zobel_____
            DATE                                        RYA W. ZOBEL
                                              UNITED STATES DISTRICT JUDGE